

**MELTZER LIPPE GOLDSTEIN & BREITSTONE, LLP**
190 Willis Avenue, Mineola, NY 11501 • T. 516.747.0300
www.meltzerlippe.com

*Richard Howard, Esq.*
*Direct Dial: 516-747-0300 ext. 177*
*Email: RHoward@meltzerlippe.com*
*Facsimile 516-237-2893*

November 18, 2019

**VIA ECF AND FEDERAL EXPRESS**
Honorable Ann M. Donnelly
225 Cadman Plaza East
Courtroom 4GN
Brooklyn, New York 11201

      Re:    ***Vargas v. Jack's Eggs and Other Ingredients LLC***
               **Docket No. 1:18-cv-05341**
               **MLGB File No.:  10822-00050**

Your Honor:

      I write on behalf of all parties, to happily advise the Court that the parties have reached an amicable agreement to resolve this matter.  In accordance with City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir.1974), Mosquera v Masada Auto Sales, Ltd., 2011 WL 282327 (EDNY 2011), and Wolinsky v. Scholastic Inc., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012), I write to explain the fundamental fairness of the settlement of this action. Copies of the settlement documents are enclosed herewith as Exhibit A.

**Background**

      This action was commenced alleging violations of New York Labor Law and the Fair Labor Standards Act.  Plaintiffs were a driver and his helper (assistant driver), employed by Jack's Egg Farm ("Jack's").

      Plaintiffs claimed they worked over forty (40) hours per week for Jack's and were not paid at time and one-half for said overtime hours.  Defendants asserted the Motor Carrier Act Exemption applied to Jack's and therefore Plaintiffs were owed no overtime.

      In resolving this action, the parties are releasing all claims, including those under the FLSA and New York State Labor Law.  Consequently, the need for the Cheeks review.

**MELTZER LIPPE GOLDSTEIN & BREITSTONE, LLP**

The Honorable Anne M. Donnelly
November 18, 2019
Page 2

**Parties' Allegations**

Plaintiffs asserted they did not drive out of state and are therefore not covered by the FLSA. Plaintiffs cite to Chaohui Tang v. Wing Keung Enterprises, 210 F.Supp.3d 372 (EDNY 2016. Plaintiffs argued that they were owed a total of approximately $36,673 in unpaid overtime wages and total damages of approximately $116,000, as their best-case scenario recovery.

Defendants assert that whether they drove interstate is irrelevant, as long as they were subject to same and the company was subject to the exemption and was regulated by the Secretary of Transportation rather than the Secretary of Labor.

**Strengths of the Plaintiff's Position**

Plaintiffs' primary strength consist of Jack's failing to keep records that would connect Plaintiffs to any particular vehicle (to show they did drive interstate) and the aforesaid Tang case.

**Strengths of the Defendants' Position**

The Defendant's strength stems from a substantial body of case law that stands for the proposition that the exemption applies to the employer, not each employee separately, again, the relevant criteria is whether they could have been required to drive interstate, not whether they did, Fox v. Commonwealth Worldwide Chauffeured Transp. Of NY, LLC, 865 F.Supp.2d 257, 266 [EDNY 2012], Songer v. Dillon Resources, Inc., 618 F.3d 467 (5th Cir. 2010). *See also* U.S. Dep't of Labor Fact Sheet #19.

Apart from the issue of whether or not Plaintiffs were exempt, Defendants contended that Plaintiff's allegations of the hours they worked were exaggerated.

**Litigation Proceedings**

Some documentary discovery was exchanged, but no depositions were held. The parties did, however engage in frank discussions and mediated before Patrick ("Mike") McKenna, all of which led to the proposed settlement.

**The Settlement**

Through the passage of time and the efforts of counsel and the parties, an amicable resolution was reached, which would provide significant payment to Plaintiff, while recognizing potential weaknesses in both the defense and prosecution of the Complaint.

**MELTZER LIPPE GOLDSTEIN & BREITSTONE, LLP**

The Honorable Anne M. Donnelly
November 18, 2019
Page 3

Under the circumstances, this appears an eminently fair settlement to the Plaintiff. The settlement provides the most expedient way for Plaintiffs to recover the vast majority of the allegedly unpaid wages owed to them and avoid the risk of dismissal of the Subject Complaint.

A review of the "Grinell factors,"[1] and "Wolinsky factors" further reveals the fundamental fairness of the settlement. In sum, the litigation was complex by the nature of the somewhat inconsistent case law on point. Had the litigation continued, it would have done so for an extreme period of time, considering the absence of depositions to date. Of course greater length in and of itself increases cost dramatically. By settling before all depositions began, but after the exchange of documentary discovery and frank interchange between counsel, the parties were able to get a reasonable idea of the strengths and weaknesses of each other's positions without incurring unnecessary expense. Consequently, the amount of the settlement is eminently reasonable.

In sum, the benefits of this settlement for all concerned are compelling. Attorney's fees have been kept to a reasonable amount. The Plaintiffs are receiving their payment presently, without concern for the potential bankruptcy(ies) of the Defendants. The certainty of payment is of obvious benefit to all concerned. Consequently, the settlement is eminently fair.

**Confidentiality**

No party seeks the sealing or confidentiality of the settlement documents.

**Attorneys' Fees**

$14,842.00 of the settlement amount will be allocated as attorneys' fees and costs. $28,158 will be allocated to the two Plaintiffs, with $20,555.34 to Victor Vargas and $7,602.66 to Jose Manuel Vargas.

The amount provided to Plaintiffs' counsel under the settlement is fair and reasonable and well within the range of fees typically awarded in cases in this Circuit. Counsel's lodestar is $5,180.00 in attorneys' fees and $763.00 in costs[2], making the fee counsel will receive under the agreement reasonable in light of their lodestar.

The following is a summation of the backgrounds and rates of the attorneys who worked on this matter:

---

[1]    While the settlement in question is not on a class-wide basis, factors for determining fairness would appear largely equivalent.

[2]    A copy of Plaintiff's counsel's billing record is attached as Exhibit B.

**MELTZER LIPPE GOLDSTEIN & BREITSTONE, LLP**

The Honorable Anne M. Donnelly
November 18, 2019
Page 4

     **i.**    **Michael Faillace's** work is billed at the rate of $450 per hour, which is his standard billing rate for matters paid on an hourly basis. Mr. Faillace is the Managing Member of Michael Faillace & Associates, P.C, and has been in practice since 1983. From 1983 to 2000, he was in-house Employment Counsel with International Business Machines Corporation (IBM). Mr. Faillace taught employment discrimination as an Adjunct Professor at Fordham University School of Law since 1992 and at Seton Hall University Law School from 1995 to 1998, and is a nationally-renowned speaker and writer on employment law. He also is the author of the ADA, Disability Law Deskbook: The Americans with Disabilities Act in the Workplace, published by Practicing Law Institute (PLI), and other employment law publications and presentations. Faillace's work is indicated by the initials "MF."

     **ii.**    **Joshua Androphy** is the senior attorney at Michael Faillace & Associates, P.C. and his work is billed at $400 per hour. This is the rate he actually bills and charges for work that is billed and paid on an hourly basis. He graduated from Columbia University School of Law in 2005, where he was a Harlan Fiske Stone Scholar and Managing Editor of the Columbia Journal of Law and Social Problems. Following law school, he developed a broad background in litigation at Olshan Frome Wolosky LLP, where he practiced complex commercial litigation, employment litigation, securities litigation and contract litigation for seven years. At his departure from Olshan Frome Wolosky LLP in 2012, his work was billed at the rate of $450 per hour. Since joining Michael Faillace & Associates, P.C. in 2012, he has been responsible for litigating all aspects of individual, collective, and class action employment claims in state and federal court. Androphy has served as the principal trial attorney on over twenty FLSA trials in his seven years since joining Michael Faillace & Associates, P.C. He was named a Super Lawyers Rising Star for employment litigation in 2014, 2015, 2016, 2017, and 2018. Work performed by Androphy is indicated by the initials "JA."

     **iii.**    Work performed by paralegals is billed at the rate of $100 and indicated by the initials "PL."

These rates are reasonable given the experience of the attorneys in wage and hour matters, and their performance in this case. *See Perez v. Platinum Plaza 400 Cleaners, Inc.,* Index No. 12-cv-9353 (PAC), 2015 U.S. Dist. LEXIS 78079, *3 n. 1 (S.D.N.Y. June 16, 2015) (awarding requested rates to Michael Faillace and one of his associates at this firm, Joshua Androphy, finding they had "demonstrated entitlement to these rates based on their experience in wage and hour litigation and their performance in this case").

980666.1

**MELTZER LIPPE GOLDSTEIN & BREITSTONE, LLP**

The Honorable Anne M. Donnelly
November 18, 2019
Page 5

**Conclusion**

Based upon the above, it is respectfully submitted that the settlements reached in the above referenced matter fairly compensates the Plaintiffs and should be approved in its entirety. We, therefore, respectfully request that the enclosed stipulation of discontinuance be so ordered.

Your consideration of the above is appreciated.

Respectfully submitted,
MELTZER, LIPPE, GOLDSTEIN & BREITSTONE, LLP

RMH/kc
Encl.

Richard M. Howard
*Attorneys for Defendants*
190 Willis Avenue
Mineola, New York
(516) 747-0300

cc:     Joshua Androphy, Esq.
        Client

980666.1

# EXHIBIT A

## SETTLEMENT AGREEMENT AND RELEASE

IT IS HEREBY STIPULATED AND AGREED between Victor Vargas and Jose Manuel Vargas (jointly hereafter referred to as "Releasors" or "Employees") on one hand, and Jack's Eggs and Other Ingredients LLC, d/b/a Jack's Egg Farm, Jack Neustadt, and Mordecai Neustadt ("Jack's" or "Releasees") and any affiliated entity of Releasees, including any sister company, subsidiary or parent company, any officer, shareholder or member of the Releasees's Board of Directors and any agents, employees, principals, partners, officers, successors, and assigns of Releasees, both individually and in their official capacities (collectively hereafter referred to as "Jack's", "Releasees" or "Employer") this ___ day of October, 2019, that any Releasor whose employment with Releasees ceased prior to the execution of this Agreement and Release will not seek to reenter the employ of Releasees.

In return for the good and sufficient consideration set forth below, Releasors and Releasees agree to resolve all claims against each other, as follows:

1.      Releasees shall pay Releasors a total sum of forty-three thousand dollars ($43,000.00) payable as follows:

A.      Releasees shall issue, within thirty (30) days after the Court has accepted these terms of settlement, a check made payable to Michael Faillace & Associates, in the net and gross sum of forty-three thousand dollars ($43,000.00).

B.      Releasor may issue an IRS tax form 1099 regarding this payment to Michael Faillace & Associates, P.C. in the amount of forty-three thousand dollars ($43,000.00).  Michael Faillace & Associates, P.C. shall be responsible for distributing settlement funds to the Releasees and issuing appropriate IRS tax forms 1099 to Releasees.

2.      In return for the consideration described above, Releasors and Releasees release and forever discharge each other, their agents, employees, successors, and assigns, and all affiliated business entities, both individually and in their official capacities, from any and all claims, causes of action, suits, back-wages, benefits,

976618.1

976618.1

attorneys' fees, pain and suffering, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims, charges, complaints and demands whatsoever, in law, or equity, of any and every kind, nature and character, known or unknown, arising under the Fair Labor Standards Act of 1938, 29 U.S.C. §§201, et seq., as amended, and related regulations, the New York Labor Law and related regulations promulgated by the NYS Commissioner of Labor and any other claims for alleged unpaid wages, unpaid minimum wage, unpaid overtime compensation, failure to provide required notices and/or wage statements, liquidated damages, interest, costs, penalties or attorneys' fees under any federal, state or local laws, as well as any claims for retaliation pursuant to the FLSA, 29 U.S.C. §215, and the NYLL, Labor Law §215, based upon any conduct occurring from the beginning of the world to the date of the Plaintiff's execution of this Agreement,  against each other, their agents, successors and assigns, both individually and in their official capacities, from the beginning of the world to the date of this Agreement.

3.      Releasors promise and represent that they will withdraw, with prejudice, or stipulate to dismiss with prejudice, any and all outstanding administrative complaints or charges, filed with federal, state and local agencies/administrative bodies arising out of the wages paid each and/or any Releasor by Releasees and will also withdraw with prejudice all judicial actions, as well as any and all other lawsuits, claims, demands, appeals or actions pending against Releasees (as defined above) arising out of the wages paid Releasor by Releasees, including, but not limited to the Complaint pending in the United States District Court for the Eastern District of New York, bearing Case Number 1:18-cv-05341, and will not file any other administrative or judicial complaints, charges, lawsuits, claims, demands, appeals or actions of any kind based on the wages paid Releasors during their individual employment with Releasees.  In the event any such complaints, charges, lawsuits, claims, demands, appeals or actions are not withdrawn or are filed due to circumstances beyond any Releasor's control, each Releasor promises and represents that he will not voluntarily testify, give evidence or otherwise participate or cooperate in any investigation or other proceedings connected with or resulting from such complaints, charges, lawsuits, claims, demands, appeals or actions and that he will

976618.1976618.1                                      2

execute such papers or documents as Releasees determines may be necessary to have said complaint, charge, lawsuit, claim, demand or action dismissed with prejudice.

In the event any Releasor is subpoenaed to testify concerning wages paid by Releasees, he will immediately notify Releasees to permit Releasees a reasonable opportunity to seek to quash or modify any such subpoena.

4.    Releasors agree and understand that nothing contained in this Agreement and Release is an admission by Releasees of any liability, breach of duty or unlawful conduct whatsoever or violation of any local, state or federal law, regulation or ordinance.

5.    This Agreement and Release may not be modified, altered or changed except upon express written consent of both Releasors and Releasees.

6.    **Releasors have been and are hereby advised to consult legal counsel regarding this Agreement and Release.  Each Releasor represents that he has consulted legal counsel regarding this Agreement and Release.**  Each Releasor further represents that after having had a full opportunity to review and consider the terms and conditions of this Agreement and Release, and having discussed them with any member of any of his immediate family, counsel or financial advisor of his own choosing, and having had sufficient time to review and consider this Agreement and Release, he fully understands all of the provisions of this Agreement and Release and has executed same freely and voluntarily.

7.    This Agreement and Release contains the parties' entire agreement, and there are no agreements or representations that are not set forth herein.  All prior negotiations, agreements, and understandings of the parties are superseded by this Agreement and Release.

8.    Each Releasor shall execute any other instruments and/or documents that are reasonable or necessary to implement this Agreement and Release.

9.    No ambiguity in this Agreement and Release may be construed against the drafter.

976618.1976618.1                                    3

10.    The entirety of this Agreement and Release is binding upon each Releasor, his heirs, executors, administrators, agents, successors, and assigns, but each Releasor's obligations and right to any payments hereunder are not assignable by said Releasor without the express written consent of Releasees.

11.    This Agreement and Release shall be subject to and governed by the laws of the State New York. Any action to enforce the terms of this Agreement and Release must be brought in the Supreme Court of the State of New York, County of Kings or the United States District Court for the Eastern District of New York and all parties hereto agree to submit to the personal jurisdiction of said Courts.

12.    If any term or provision of this Agreement and Release or the application thereof to any person or circumstance, shall to any extent be found invalid or unenforceable, the remainder of the Agreement and Release, or the applications of such term or provisions to persons or circumstances other than to those as to which it is invalid or unenforceable, shall not be affected thereby, and each term and provision of this Agreement and Release shall be valid and be enforced to the fullest extent permitted by law.

13.    Releasor shall execute any other instruments and/or documents that are reasonable or necessary to implement this Agreement and Release.

14.    Each of the covenants contained herein is a separate and independent covenant. A breach, finding of unenforceability or waiver of any one covenant herein (or of any other covenant or agreement between these parties) shall not relieve either party of any remaining obligations hereunder.

15.    In the event of a tax assessment by any federal, state or local taxing authority, with respect to any alleged failure to make all required deductions or withholding from the sums to be paid hereunder to Releasor as part of this Agreement and Release, Releasor shall pay his own share (as a former employee) of that assessment. Releasor also agrees to pay or indemnify and hold Releasees harmless for and from any and all related withholding taxes, interest or penalties incurred by Releasees, which it may be required to pay to any taxing authorities relating to any payments made to Releasor pursuant to this Agreement.

976618.1976618.1                                   4

16.    This Agreement and Release may be executed in counterparts.

IN WITNESS WHEREOF, the Releasor and Releasees hereunto set their

hands this __ day of October, 2019

Jack's Eggs and Other Ingredients LLC d/b/a "Jack's Egg Farm"

By _____

Jack Neustadt, individually and in his official capacity

STATE OF NEW YORK      )
                       ) ss:
COUNTY OF KINGS        )

On this __14__ day of October, 2019, before me personally came Jack
Neustadt, to me known and known to me to be the individual described in and who
executed the foregoing Agreement, and he, being duly sworn, did depose and say that he
is a Member of Jack's Eggs and Other Ingredients LLC d/b/a "Jack's Egg Farm", and that
he executed said Agreement on behalf of said limited liability company at the direction of
its members.

_____
Notary Public

DAVID LANDAU
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01LA6130139
Qualified in Kings County
Commission Expires July 11, 2021

STATE OF NEW YORK      )
                       ) ss:
COUNTY OF KINGS        )

On the __14__ day of October, 2019, before me personally came Jack Neustadt,
to me known to be the individual described in and who executed the foregoing instrument
and he did duly acknowledge to me that he executed same.

_____
Notary Public

DAVID LANDAU
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01LA6130139
Qualified in Kings County
Commission Expires July 11, 2021

976618.1976618.1

_____

Mordecai Neustadt

STATE OF NEW YORK        )

                         ) ss:

COUNTY OF KINGS          )

On the _14_ day of _Nov_____ 2019, before me personally came Mordecai Neustadt, to me known to be the individual described in and who executed the foregoing instrument and he did duly acknowledge to me that he executed same.

_____

Notary Public

DAVID LANDAU
NOTARY PUBLIC, STATE OF NEW YORK
Registration No: 01LA6130139
Qualified in Kings County
Commission Expires Jun. 11, 2021

976618.1976618.1

6

_Victor Vargas_
Victor Vargas

_____
Jose Manuel Vargas

STATE OF NEW YORK    )
                     ) ss:
COUNTY OF _New York_ )

On the 4 day of ~~October~~ _November_ , 2019, before me personally came Victor Vargas,
to me known to be the individual described in and who executed the foregoing instrument
and he did duly acknowledge to me that he executed same.

_____
Notary Public

JOSHUA S. ANDROPHY
Notary Public, State of New York
No. 02AN6166515
Qualified in New York County
Commission Expires ~~August 17, 2019~~
_Jan. 8 2020_

STATE OF NEW YORK    )
                     ) ss:
COUNTY OF _____  )

On the ___ day of October , 2019, before me personally came Jose Manuel
Vargas, to me known to be the individual described in and who executed the foregoing
instrument and he did duly acknowledge to me that he executed same.

_____
Notary Public

976618.1976618.1                    7

_____
Victor Vargas

Jose Manuel Vargas

STATE OF NEW YORK )
                       ) ss:
COUNTY OF _____ )

On the _____ day of October , 2019, before me personally came Victor Vargas, to me known to be the individual described in and who executed the foregoing instrument and he did duly acknowledge to me that he executed same.

_____
Notary Public

STATE OF ~~NEW YORK~~ Pennsylvania )
                           ) ss:
COUNTY OF Montgomery )

On the 7 day of ~~October~~ November , 2019, before me personally came Jose Manuel Vargas, to me known to be the individual described in and who executed the foregoing instrument and he did duly acknowledge to me that he executed same.

_____
Notary Public

Commonwealth of Pennsylvania - Notary Seal
SAMUEL RODRIGUEZ, Notary Public
Montgomery County
My Commission Expires October 8, 2022
Commission Number 1193638

# EXHIBIT B

### *Michael Faillace & Associates, P.C.*
60 East 42nd Street
Suite 4510
New York, NY 10165

Ph:(212) 317-1200          Fax:(212) 317-1620

Antonia Sanchez                                        November 15, 2019

|  |  |
|---|---|
| File #: | JacksEgg4 |
| Inv #: | Sample |

**Attention:**

RE:    Vargas v. Jacks Eggs and Other Ingredients LLC, EDNY Index No.
       18-cv-5341 (AMD) (SMG)

| DATE | DESCRIPTION | HOURS | AMOUNT | LAWYER |
|---|---|---|---|---|
| Sep-21-18 | reviewed and corrected complaint; sent complaint to staff for further review and filing | 1.50 | 675.00 | MF |
|  | Revise complaint, create civil cover sheet and summonses and file in ECF | 1.00 | 100.00 | PL |
| Dec-21-18 | Send summons and complaint for individual defendants and corp for service | 0.50 | 50.00 | PL |
| Jan-21-19 | Review Def.'s Answer filed  and notice of apperance by opposing counsel, updated on status | 0.20 | 90.00 | MF |
| Jan-22-19 | Review scheduling order, chambers individual rules, and updated calendar accordingly | 0.20 | 90.00 | MF |
| Jan-25-19 | File on ecf Summons returned executed | 0.20 | 20.00 | PL |
| Jan-30-19 | review case materials; email R Howard re scheduling conflict with initial conference, draft and file letter motion to adjourn | 0.50 | 200.00 | JA |
|  | Review court order adjourning initial conference | 0.20 | 90.00 | MF |
| Feb-20-19 | email R Howard re adjourn conference; draft and file letter motion to adjourn | 0.30 | 120.00 | JA |

Invoice #:    Sample                    Page  2                         November 15, 2019

| Date | Description | Hours | Amount | |
|---|---|---|---|---|
| Feb-26-19 | call with R Howard re case schedule, prepare for conference | 0.20 | 80.00 | JA |
| Feb-27-19 | preapre for and attend initial conference, discuss case with R Howard | 1.60 | 640.00 | JA |
| Mar-22-19 | Draft Plaintiff's damages chart | 0.80 | 80.00 | PL |
| Mar-25-19 | call with R Howard re settlement | 0.10 | 40.00 | JA |
| Mar-27-19 | Reviewed letter written by opposing counsel updating the court on status of case and court order referring case to mediation | 0.20 | 90.00 | MF |
| Sep-06-19 | review documents, update damages chart, draft mediation statement | 0.50 | 200.00 | JA |
| | Call both Plaintiffs and ask follow up questions regarding their employment | 0.30 | 30.00 | PL |
| Sep-13-19 | draft mediation statement; research exemption issues | 0.40 | 160.00 | JA |
| Sep-20-19 | Call both clients reminded them to be present next week for the mediation | 0.30 | 30.00 | PL |
| Sep-23-19 | prepare for and participate in mediaiton | 3.10 | 1,240.00 | JA |
| | Meet with clients, bring them to court and attend mediation with clients and translate for attorney, mediator and clients all proceedings | 3.50 | 350.00 | PL |
| Sep-30-19 | reviewed  court order requiring us to file our fairness motion | 0.10 | 45.00 | MF |
| Oct-07-19 | review agreement draft; draft fairness letter | 0.80 | 320.00 | JA |
| Oct-31-19 | edit fairness letter | 0.80 | 320.00 | JA |
| | Email Plaintiff copy of the settlement agreement to review and sign/get notarized | 0.20 | 20.00 | PL |
| Nov-01-19 | Call clients to schedule them to come in and review and sign settlement agreement | 0.30 | 30.00 | PL |
| Nov-04-19 | Translate the settlement agreement for Plaintiff | 0.50 | 50.00 | PL |
| Nov-08-19 | Consolidate signature pages for the settlement | 0.20 | 20.00 | PL |

Invoice #:     Sample                    Page   3                              November 15, 2019

                          agreement, scan and save, email final version
                          to opposing counsel
                                                                _____
                          Totals                       18.50     $5,180.00

**DISBURSEMENTS**

Sep-21-18        Filed  Complaint                                   400.00
Dec-21-18        Service on Jacks Eggs and Other Ingredients         63.00
                 LLC
Sep-23-19        Mediation Fee                                      300.00
                                                                _____
                 Totals                                            $763.00

                 **Total Fee & Disbursements**                              $5,943.00

                 **Balance Now Due**                                        $5,943.00